[Civ. No. 903.   Fifth Dist.   July 15, 1968.]

RALPH BURKE, Plaintiff and Appellant, v. JAMES F. STEVENS, Defendant and Respondent.

Chris E. Rockas and George C. Coleman for Plaintiff and Appellant.

Ray W. Donahue for Defendant and Respondent.

CONLEY, P. J.—The plaintiff, Ralph Burke, filed a complaint to quiet title to lots 22, 23, 24, 25, 26, and 27 of Moxley and Potter's Subdivision No. 1 in Tulare County. It alleges that B. L. Stevens and James F. Stevens, sons of his deceased wife by an earlier marriage, claim an interest in the land without right. One of the defendants, James F. Stevens, alleges in his answer that he has succeeded to the interest of his brother, B. L. Stevens, and that, although under the will of his deceased mother, the plaintiff is entitled to a life estate in an undivided one-half interest in the land, and also owns

the other undivided half interest outright, said answering defendant is the owner of the remaining interest in one-half of the land, less the life estate of the plaintiff. As a first affirmative defense, said defendant alleges that his mother died testate; that the executor of her estate was Robert C. Natzke, a Porterville attorney; that during the course of probate, the executor filed an action in partition to raise the necessary funds to pay federal estate taxes, inheritance taxes, executor's and attorney's fees, and other costs of administration, and that the plaintiff and defendant had thereupon agreed in writing that each of them should pay one-half of the amount necessary to avoid the sale of the property; that said defendant paid one-half of the costs of closing the estate, because plaintiff had represented that he owned only a life estate in the undivided one-half interest; that in reliance upon such representation, the defendant purchased the interest of his brother, Benton L. Stevens, for $10,000, and also had paid $5,993.53 as his own share of the costs of closing the estate, and that by reason of these facts the plaintiff herein is estopped from denying that said defendant has the interest claimed by him in the real property. By an amended answer the defendant also alleges that the plaintiff was guilty of laches, which constitutes a bar to his recovery.

The pretrial conference order specifies that matters agreed upon were that plaintiff was the lawful husband of Grace Burke at the time of her death; that she died August 16, 1962; that the real property consists of lots 22, 23, 24, 25, 26, and 27 of Moxley and Potter's Subdivision No. 1, in the County of Tulare, as per map recorded in book 11, page 3 of maps in the office of the county recorder of said county; that James F. Stevens' interest in the property was at issue by reason of an asserted termination of joint tenancy by the decedent; that there was an issue of estoppel by reason of representation and a third issue of laches. The pretrial conference order also states that plaintiff contended that on the death of the joint tenant, Grace Burke, complete title to the land vested in him, but that defendant contended that by reason of the decree of distribution in the estate of Grace Burke he is the owner of a remainder interest in the real property, subject to plaintiff's life tenancy. and that because plaintiff represented that he owned only a life tenancy he is estopped now to deny it and also that plaintiff has been guilty of laches in failing to bring his action in timely fashion.

The case was tried by the court sitting without a jury; the

trial judge decided that the joint tenancy which had existed in the real property between plaintiff and decedent, Grace Burke, was terminated by her execution of a deed through her attorney in fact, Robert Natzke, who was also her attorney at law and later executor of her estate, to Mr. John P. Moran and a succeeding deed from Mr. Moran to the decedent, Grace Burke. This secret plan to terminate the joint tenancy was hatched pursuant to a letter from Mrs. Burke to Mr. Natzke dated October 2, 1960, and the later power of attorney given to Mr. Natzke by her for this purpose. The trial judge decided that the two deeds, one to Mr. Moran, the other from Mr. Moran to decedent, were effectively delivered, even though accomplished secretly, and that they terminated the joint tenancy. The court held that the intent of the grantor was to abolish said joint tenancy at once by the execution of the deeds; the trial judge also held that even if the deeds were not effective, the plaintiff was estopped by his conduct and his inducement of the defendant, James F. Stevens, to act upon, and spend money as a result of, the belief that the joint tenancy had been terminated, and also that no legal reason was shown for the delay in bringing the action and that the defense of laches was valid.

The court found that Grace Burke wrote the letter to her attorney directing that he prepare a power of attorney for her execution, naming him as her attorney in fact, and directing him to terminate the joint tenancy by which she and the plaintiff held title to the real property; that on October 2, 1960, she executed the power of attorney and delivered it to Mr. Natzke; that on October 5, 1960, Natzke, as her attorney in fact, executed and delivered a quitclaim deed conveying her entire interest in the property to John P. Moran; that on October 6, 1960, John P. Moran in turn executed and delivered a quitclaim deed conveying said interest in the property to Grace B. Burke; that acting on the advice of her attorney, she intended immediately to terminate the joint tenancy through the execution and delivery of said quitclaim deed by her attorney in fact and the new deed of Mr. Moran to herself; that the deeds were effectively delivered and that their execution and delivery terminated the joint tenancy under which she and her husband had previously owned the land; that by letter dated October 2, 1960, she stated that her consideration for terminating the joint tenancy was to be able to dispose of her interest in the real property by will, since the plaintiff as co-joint tenant had indicated that he would dis-

pose of the property upon her death as he saw fit, if she should die first; although the plaintiff co-tenant was not informed of the termination of the joint tenancy, there was no requirement for such notice in the absence of fraud; that no fraud existed; that she died testate on August 16, 1962; that the will was filed and admitted to probate, and that by its terms an undivided one-half remainder interest in the real property was devised to James F. Stevens III and Benton L. Stevens; that during the probate proceedings the executor Natzke filed a petition for authority to partition, because the estate did not have funds to pay inheritance tax, estate taxes, costs of administration, and executor's and attorneys' fees; that after the filing of the petition to partition, defendant purchased the interest of his brother, Benton L. Stevens, for the sum of $10,000; that on August 25, 1963, plaintiff and defendant entered into an agreement prepared by plaintiff's attorney, W. G. Machetanz, providing that the plaintiff and defendant should pay to the executor $11,987.05 to defray costs of administration, including federal estate taxes and state inheritance taxes, and that defendant paid one-half thereof as his share; that the estate was then distributed by the probate court in accordance with the final decree of distribution; that during the course of administration, the plaintiff filed a California State Inheritance Tax Affidavit but did not list the real property described in the complaint as joint tenancy real property; by letter dated December 20, 1963, an offer was made on behalf of the plaintiff to purchase the interest of the defendant and his brother in the real property for $42,500, which was refused, that from August 16, 1963, to June 22, 1966, plaintiff did not assert any ownership in the undivided one-half interest in the real property other than that of a life tenant.

Judgment followed declaring that Ralph Burke owned a life estate in the one-half interest and the answering defendant owned a remainder in an undivided one-half interest in the property; the judgment also provided that even if this were not so that plaintiff's cause of action was barred by estoppel and that the recovery by the plaintiff was also barred by his laches.

The evidence shows that Ralph Burke originally purchased this 60-acre orange grove in Tulare County, taking title with his wife, Grace, as a joint tenant on August 12, 1941. There is no contention that the deed to the Burkes did not create a

joint tenancy; the husband and wife were each thereby vested with title to an undivided half of the property ". . . with power to convey that half interest and thereby terminate the joint tenancy." (*Rupp* v. *Kahn*, 246 Cal.App.2d 188, 195 [55 Cal.Rptr. 108].) (See also: *Estate of Harris*, 9 Cal.2d 649 [72 P.2d 873]; *Hammond* v. *McArthur*, 30 Cal.2d 512 [183 P.2d 1]; *Reiss* v. *Reiss*, 45 Cal.App.2d 740 [114 P.2d 718]; 13 Cal.Jur.2d, Cotenancy, § 18, pp. 303-304.) It was not until June 1960, some 19 years later, that Mrs. Burke talked about changing the method of holding the property with her personal attorney, Mr. Natzke; she wrote a letter to him setting forth certain dispositions she wished to make of personal property jointly owned with her husband in the event of her death; the letter stated that the real property was held in joint tenancy with the consequence that the survivor would take all, so there was nothing she could do about it. The respondent maintains, and the trial court in effect found, that Mrs. Burke's will of October 2, 1960, superseded this letter. The actions above noted with an intent to terminate the joint tenancy then followed. But the appellant argues that the record shows that had Ralph Burke died first, Mrs. Burke could have suppressed the deeds and taken all the property as a surviving joint tenant, because her directions were so clear to the attorney that complete secrecy was to be maintained.

While the actions of the wife, from the standpoint of a theoretically perfect marriage, are subject to ethical criticism, and her stealthy approach to the solution of the problems facing her is not to be acclaimed, the question before the court is not what should have been done ideally in a perfect marriage, but whether the decedent and her attorneys acted in a legally permissible manner. Irrespective of the original source of the money which bought the land, and the generous trust reposed in the wife by the husband, it is clear that when title to "the ranch" was taken it was in joint tenancy with the husband and wife having equal rights. Such a joint tenancy, of course, by virtue of its form, would have resulted in a survivor gaining the right to the entire land if it had not been terminated. (13 Cal.Jur.2d, Cotenancy, § 16, pp. 301-303.)

On the other hand, under the law, either of the tenants might legitimately destroy the joint tenancy through a deed of his or her interest to a third party. (13 Cal.Jur.2d, Cotenancy, § 18, pp. 303-305.) Such a deed, of course, would necessarily have to be in proper form and presently delivered

to take effect immediately and not at some future time. As found by the trial court, the requisites of such a transaction were complied with by the decedent and by Mr. Natzke, her attorney in fact. He was given a power of attorney by Mrs. Burke with the specific right and duty to terminate the joint tenancy. In compliance with this provision, Mr. Natzke made out a deed in proper form by which Mrs. Burke, through him, legally transferred her interest in the joint tenancy to Mr. Moran, who, incidentally, was an office associate of Mr. Natzke. Mr. Moran accepted the deed, and on the following day he executed a quitclaim deed back to Mrs. Burke so that at the time of her death the joint tenancy had been terminated and she then had a full right under the law to leave a will which gave to the beneficiaries named in the document her half of the former joint tenancy property. Her will provided that the plaintiff should have a life estate in her half of the property and that upon his death her sons would inherit her half. The court found that all of the requisites of a proper handling of the matter had been complied with. Inasmuch as two attorneys, presumably familiar with the law relating to joint tenancy, devised and carried out this course of action, the intent to pass title to one-half of the joint tenancy property was present in connection with the delivery of the first deed.

It was unnecessary in connection with the execution of such a deed that there should be notification to the other joint tenant and unnecessary that the deed be recorded; neither acknowledgment or recordation is necessary. (*Kimbro* v. *Kimbro,* 199 Cal. 344, 349 [249 P. 180] ; *Gordon* v. *City of San Diego,* 108 Cal. 264, 267 [41 P. 301] ; 15 Cal.Jur.2d, Deeds, § 76, pp. 474-475.) It is not necessary that the consent to termination of joint tenancy be obtained from the other joint tenant. (*Thompson* v. *Thompson,* 218 Cal.App.2d 804, 807 [32 Cal.Rptr. 808] ; *Wilk* v. *Vencill,* 30 Cal.2d 104, 108-109 [180 P.2d 351].) None of these things was done, but it was not essential that any of them should be effected. The deed passed immediate title to Mr. Moran, and when he in turn deeded the same interest in the land to Mrs. Burke, that deed was also effective.

Much is made by appellant of the observation that the executed and delivered deeds were afterwards kept in the folder of Mrs. Burke in the office of her attorney, Mr. Natzke, and it is speculated that if Mr. Burke had died first nothing would have been said about the deeds passing between Mrs. Burke

through Mr. Natzke and Mr. Moran and that, in such circumstances, Mrs. Burke would become apparent owner of the entire land constituting the orange grove. This suggestion that the parties involved, Mrs. Burke, Mr. Natzke, and Mr. Moran, would join in a conspiracy to hide the truth and commit a wrong, is not supported by any evidence; it is pure guess and contrary to the presumption of fair dealing. The mere fact that a wrong of this kind is imaginable cannot be used to counter the fact that the joint tenancy was legally terminated. One cannot contingently assume fraud, but, on the contrary, must conclude that the transaction would have been properly utilized by two reputable attorneys and a citizen under all developing circumstances.

The judgment, therefore, must be approved, and it is wholly unnecessary to consider the additional contentions made by the defendant with respect to laches and estoppel; these arguments were upheld contingently by the superior court, but it would no longer be proper to consider them as a second string of reasons to justify the judgment. One good reason is enough.

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.

A petition for a rehearing was denied August 12, 1968, and appellant's petition for a hearing by the Supreme Court was denied September 11, 1968. Mosk, J., was of the opinion that the petition should be granted.