[Civ. No. 46482. First Dist., Div. Four. Feb. 25, 1980.]

JACK C. RIDDLE, Plaintiff and Respondent, v.
VALERIE LEE PARISH HARMON, as Executrix, etc., Defendant
and Appellant.

**COUNSEL**

Farella, Braun & Martel, Jon F. Hartung and Richard J. Hicks for Defendant and Appellant.

Jack C. Hamson for Plaintiff and Respondent.

OPINION

POCHÉ, J.—We must decide whether Frances Riddle, now deceased, unilaterally terminated a joint tenancy by conveying her interest from herself as joint tenant to herself as tenant in common. The trial court determined, via summary judgment quieting title to her widower, that she did not. The facts follow.

Mr. and Mrs. Riddle purchased a parcel of real estate, taking title as joint tenants. Several months before her death, Mrs. Riddle retained an attorney to plan her estate. After reviewing pertinent documents, he advised her that the property was held in joint tenancy and that, upon her death, the property would pass to her husband. Distressed upon learning this, she requested that the joint tenancy be terminated so that she could dispose of her interest by will. As a result, the attorney prepared a grant deed whereby Mrs. Riddle granted to herself an undivided one-half interest in the subject property. The document also provided that "The purpose of this Grant Deed is to terminate those joint tenancies formerly existing between the Grantor, FRANCES P. RIDDLE, and JACK C. RIDDLE, her husband. . . ." He also prepared a will disposing of Mrs. Riddle's interest in the property. Both the grant deed and will were executed on December 8, 1975. Mrs. Riddle died 20 days later.

The court below refused to sanction her plan to sever the joint tenancy and quieted title to the property in her husband. The executrix of the will of Frances Riddle appeals from that judgment.

The basic concept of a joint tenancy is that it is one estate which is taken jointly. Under the common law, four unities were essential to the creation and existence of an estate in joint tenancy: interest, time, title and possession. (*Tenhet* v. *Boswell* (1976) 18 Cal.3d 150, 155 [133 Cal.Rptr. 10, 554 P.2d 330].) If one of the unities was destroyed, a tenancy in common remained. (*Id.*) Severance of the joint tenancy extinguishes the principal feature of that estate, the *jus accrescendi* or right of survivorship. This "right" is a mere expectancy that arises "only upon success in the ultimate gamble—survival—and then only if the unity of the estate has not theretofore been destroyed by voluntary conveyance . . . , by partition proceedings . . . , by involuntary alienation

under an execution . . ., or by any other action which operates to sever the joint tenancy." (*Id.*, at pp. 155-156, citations omitted.)

■ An indisputable right of each joint tenant is the power to convey his or her separate estate by way of gift or otherwise without the knowledge or consent of the other joint tenant and to thereby terminate the joint tenancy. (*Delanoy* v. *Delanoy* (1932) 216 Cal. 23, 26 [13 P.2d 513]; *Estate of Harris* (1937) 9 Cal.2d 649, 658 [72 P.2d 873]; *Wilk* v. *Vencill* (1947) 30 Cal.2d 104, 108-109 [180 P.2d 351].) If a joint tenant conveys to a stranger and that person reconveys to the same tenant, then no revival of the joint tenancy occurs because the unities are destroyed. (*Hammon* v. *McArthur* (1947) 30 Cal.2d 512 [183 P.2d 1]; Comments, *Severance of Joint Tenancy in California* (1957) 8 Hastings L.J. 290, 291.) The former joint tenants become tenants in common.

At common law, one could not create a joint tenancy in himself and another by a direct conveyance. It was necessary for joint tenants to acquire their interests at the same time (unity of time) and by the same conveyancing instrument (unity of title). So, in order to create a valid joint tenancy where one of the proposed joint tenants already owned an interest in the property, it was first necessary to convey the property to a disinterested third person, a "strawman," who then conveyed the title to the ultimate grantees as joint tenants. This remains the prevailing practice in some jurisdictions. Other states, including California, have disregarded this application of the unities requirement "as one of the obsolete 'subtle and arbitrary distinctions and niceties of the feudal common law,' [and allow the creation of a valid joint tenancy without the use of a strawman]." (4A Powell on Real Property (1979) [¶] 616, p. 670, citation omitted.)

By amendment to its Civil Code,[1] California became a pioneer in allowing the *creation* of a joint tenancy by direct transfer. ■ Under authority of Civil Code section 683, a joint tenancy conveyance may be

[1]Civil Code section 683, as amended in 1955, provides in relevant part that: "A joint interest is one owned by two or more persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or by transfer from a sole owner to himself and others, or from tenants in common or joint tenants to themselves or some of them, or to themselves or any of them and others, or from a husband and wife, when holding title as community property or otherwise to themselves or to themselves and others or to one of them and to another or others, when expressly declared in the transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants."

made from a "sole owner to himself and others," or from joint owners to themselves and others as specified in the code. (See Bowman, Real Estate Law in Cal. (4th ed. 1975) p. 105.) The purpose of the amendment was to "avoid the necessity of making a conveyance through a dummy" in the statutorily enumerated situations. (Third Progress Rep. to the Legislature (Mar. 1955) p. 54, 2 Appen. to Sen. J. (1955 Reg. Sess.).) Accordingly, in California, it is no longer necessary to use a strawman to *create* a joint tenancy. (*Donovan* v. *Donovan* (1963) 223 Cal.App.2d 691, 697 [36 Cal.Rptr. 225].) This court is now asked to reexamine whether a strawman is required to *terminate* a joint tenancy.

Twelve years ago, in *Clark* v. *Carter* (1968) 265 Cal.App.2d 291, 295 [70 Cal.Rptr. 923], the Court of Appeal considered the same question and found the strawman to be indispensable. As in the instant case, the joint tenants in *Clark* were husband and wife. The day before Mrs. Clark died, she executed two documents without her husband's knowledge or consent: (1) a quitclaim deed conveying her undivided half interest in certain real property from herself as joint tenant to herself as tenant in common, and (2) an assignment of her undivided half interest in a deed of trust from herself as joint tenant to herself as tenant in common. These documents were held insufficient to sever the joint tenancy.

After summarizing joint tenancy principles, the court reasoned that "[U]nder California law, a transfer of property presupposes participation by at least two parties, namely, a grantor and a grantee. Both are essential to the efficacy of a deed, and they cannot be the same person. A transfer of property requires that title be conveyed by one living person to another. (Civ. Code, § 1039.)... [¶] Foreign authority also exists to the effect that a person cannot convey to himself alone, and if he does so, he still holds under the original title. [¶] Similarly, it was the common law rule that in every property conveyance there be a grantor, a grantee, and a thing granted. Moreover, the grantor could not make himself the grantee by conveying an estate to himself." (*Clark, supra*, at pp. 295-296, citations omitted.)

That "two-to-transfer" notion stems from the English common law feoffment ceremony with livery of seisin. (Swenson & Degnon, *Severance of Joint Tenancies* (1954) 38 Minn.L.Rev. 466, 467.) If the ceremony took place upon the land being conveyed, the grantor (feoffor) would hand a symbol of the land, such as a lump of earth or a twig, to

the grantee (feoffee). (Burby, Real Property (3d ed. 1966) p. 281.) In order to complete the investiture of seisin it was necessary that the feoffor completely relinquish possession of the land to the feoffee. (Moynihan, Preliminary Survey of the Law of Real Property (1940) p. 86.) It is apparent from the requirement of livery of seisin that one could not enfeoff oneself—that is, one could not be both grantor and grantee in a single transaction. Handing oneself a dirt clod is ungainly. Just as livery of seisin has become obsolete,[2] so should ancient vestiges of that ceremony give way to modern conveyancing realities.

"We are given to justifying our tolerance for anachronistic precedents by rationalizing that they have engendered so much reliance as to preclude their liquidation. Sometimes, however, we assume reliance when in fact it has been dissipated by the patent weakness of the precedent. Those who plead reliance do not necessarily practice it." (Traynor, *No Magic Words Could Do It Justice* (1961) 49 Cal.L.Rev. 615, 622-623.) Thus, undaunted by the *Clark* case, resourceful attorneys have worked out an inventory of methods to evade the rule that one cannot be both grantor and grantee simultaneously.

The most familiar technique for unilateral termination is use of an intermediary "strawman" blessed in the case of *Burke* v. *Stevens* (1968) 264 Cal.App.2d 30 [70 Cal.Rptr. 87]. There, Mrs. Burke carried out a secret plan to terminate a joint tenancy that existed between her husband and herself in certain real property. The steps to accomplish this objective involved: (1) a letter written from Mrs. Burke to her attorney directing him to prepare a power of attorney naming him as her attorney in fact for the purpose of terminating the joint tenancy; (2) her execution and delivery of the power of attorney; (3) her attorney's execution and delivery of a quitclaim deed conveying Mrs. Burke's interest in the property to a third party, who was an office associate of the attorney in fact; (4) the third party's execution and delivery of a quitclaim deed reconveying that interest to Mrs. Burke on the following day. The *Burke* court sanctioned this method of terminating the joint tenancy, noting at one point: "While the actions of the wife, from the

---

[2]It was not until 1845 that a statute was enacted in England making it possible for a freehold estate to be conveyed by grant deed. In America, livery of seisin was done away with long before legislative reforms were effected in the mother country. (Moynihan, *op. cit. supra*, at p. 87.)

Maitland tells us that the physical acts involved in a feoffment grew out of a "mental incapacity, an inability to conceive that mere rights can be transferred." (Maitland, *The Mystery of Seisin* (1886) 2 L.Q.Rev. 481, 489.)

standpoint of a theoretically perfect marriage, are subject to ethical criticism, and her stealthy approach to the solution of the problems facing her is not to be acclaimed, the question before the court is not what should have been done ideally in a perfect marriage, but whether the decedent and her attorneys acted in a legally permissible manner." (*Burke, supra*, at p. 34.)

Another creative method of terminating a joint tenancy appears in *Reiss v. Reiss* (1941) 45 Cal.App.2d 740 [114 P.2d 718]. There a trust was used. For the purpose of destroying the incident of survivorship, Mrs. Reiss transferred bare legal title to her son, as trustee of a trust for her use and benefit. The son promised to reconvey the property to his mother or to whomever she selected at any time upon her demand. (*Id.*, at p. 746.) The court upheld this arrangement, stating, "We are of the opinion that the clearly expressed desire of Rosa Reiss to terminate the joint tenancy arrangement was effectively accomplished by the transfer of the legal title to her son for her expressed specific purpose of having the control and the right of disposition of her half of the property." (*Id.*, at p. 747.)

In view of the rituals that are available to unilaterally terminate a joint tenancy, there is little virtue in steadfastly adhering to cumbersome feudal law requirements. "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." (Holmes, Collected Legal Papers (1920) p. 187.) ■ Common sense as well as legal efficiency dictate that a joint tenant should be able to accomplish directly what he or she could otherwise achieve indirectly by use of elaborate legal fictions.

Moreover, this will not be the first time that a court has allowed a joint tenant to unilaterally sever a joint tenancy without the use of an intermediary. In *Hendrickson v. Minneapolis Federal Sav. & L. Assn.* (1968) 281 Minn. 462 [161 N.W.2d 688], decided one month after *Clark*, the Minnesota Supreme Court held that a tenancy in common resulted from one joint tenant's execution of a "Declaration of Election to Sever Survivorship of Joint Tenancy." No fictional transfer by conveyance and reconveyance through a strawman was required.[3]

---

[3]In its reasoning the *Hendrickson* court recognized a policy disfavoring survivorship in Minnesota, noting that in modern times survivorship came to be regarded "'as an

Our decision does not create new powers for a joint tenant. A universal right of each joint tenant is the power to effect a severance and destroy the right of survivorship by conveyance of his or her joint tenancy interest to another "person." (Swenson & Degnon, *op. cit. supra*, at p. 469.) "If an indestructible right of survivorship is desired—that is, one which may not be destroyed by one tenant—that may be accomplished by creating a joint life estate with a contingent remainder in fee to the survivor; a tenancy in common in simple fee with an executory interest in the survivor; or a fee simple to take effect in possession in the future." (Swenson & Degnon, *supra*, at p. 469, fn. omitted.)

We discard the archaic rule that one cannot enfeoff oneself which, if applied, would defeat the clear intention of the grantor. There is no question but that the decedent here could have accomplished her objective—termination of the joint tenancy—by one of a variety of circuitous processes. We reject the rationale of the *Clark* case because it rests on a common law notion whose reason for existence vanished about the time that grant deeds and title companies replaced colorful dirt clod ceremonies as the way to transfer title to real property. One joint tenant may unilaterally sever the joint tenancy without the use of an intermediary device.

The judgment is reversed.

Caldecott, P. J., and Rattigan, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 14, 1980. Mosk, J., and Manuel, J., were of the opinion that the petiton should be granted.

---

"odious thing" that too often deprived a man's heirs of their rightful inheritance [fn. omitted].'" (*Hendrickson, supra*, at p. 690.)

Construing the grant deed as effecting a termination of the joint tenancy will result in the concurrent estate becoming a tenancy in common. This outcome is consistent with California's statutorily decreed preference for recognizing tenancies in common. (See Civ. Code, §§ 683, 686; *Tenhet* v. *Boswell, supra*, 18 Cal.3d 150, 157.)

Contrary to the modern preference, at common law there was a presumption in favor of joint tenancy. This presumption was based on a desire to avoid the splitting of the feudal services due to the lord of the fee. (Moynihan, Preliminary Survey of the Law of Real Property (1940) p. 130.) Land was kept in larger tracts and thus facilitated the rendering of services to the lord. Tenancy in common, on the other hand, resulted in constant subdivision. (Swenson & Degnon, *Severance of Joint Tenancies* (1954) 38 Minn. L.R. 466, 503.) Another possible reason that joint tenancy was favored is that it is easier to rely on the loyalty of one man than two. (*Id.*) As the age of feudalism ended, the reasons for the presumption in favor of joint tenancies also ended. (*Id.*)