[Civ. No. 64753. Second Dist., Div. One. Aug. 2, 1982.]

Estate of CAROLYN JOYCE GRIGSBY, Deceased.
WAYMOND GRIGSBY, Petitioner and Respondent, v.
LLOYDS BANK CALIFORNIA, as Special Administrator, etc.,
Objector and Appellant.

**COUNSEL**

Jerry E. McLinn for Objector and Appellant.

Frank R. Crandall, Haight, Dickson, Brown & Bonesteel and Roy G. Weatherup for Petitioner and Respondent.

**OPINION**

**DALSIMER, J.**—This appeal presents but one issue: Can one spouse unilaterally terminate a joint tenancy in property that has been declared by both spouses to be their homestead?

Waymond Grigsby (respondent) obtained a judgment from the probate court which adjudged that certain real property, the subject of this appeal, was joint tenancy property of respondent and his deceased wife, Carolyn Joyce Grigsby (decedent), that the joint tenancy was terminat-

ed upon decedent's death, and that the property became vested in respondent as a surviving joint tenant.

Both parties agree to the underlying facts of this case. The property was held in joint tenancy by respondent and decedent when they jointly executed and recorded the declaration of homestead on April 20, 1979. On March 9, 1981, decedent manifested her intent to terminate the joint tenancy by the familiar method of executing a quitclaim deed to a straw man and receiving a quitclaim deed back from the straw man to herself. Both quitclaim deeds were duly recorded on March 10, 1981. Mrs. Grigsby intended to destroy and, after the execution and recording of these deeds, believed that she had destroyed the joint tenancy and that she and her husband owned the home as tenants in common. Decedent had verbally indicated that her marriage had failed and that it was her intent to sever the joint tenancy so that she could devise her interest in the property to her sister. On the same day that she executed the quitclaim deed, she executed a will in favor of her sister. Decedent died on March 15, 1981, and the will she had executed on March 9, 1981, was admitted to probate after trial of a will contest filed by respondent.

Lloyds Bank California (appellant), special administrator of the estate of decedent, contends that by virtue of the repeal of the right of survivorship provisions of the California homestead statutes, Statutes 1980, chapter 119, there is no longer any restriction on a spouse's right to alter the form of ownership of homestead property.

Although we agree with the contention of respondent that a homestead of a married person cannot be conveyed or encumbered unless the operative instrument is executed and acknowledged by both husband and wife, it does not follow therefrom that a married person may not change the form of ownership of homestead property. Respondent maintains that, once a homestead is recorded on real property owned by the spouses as joint tenants, one spouse is without power or authority to act unilaterally to change the type of ownership. For this proposition, respondent relies, inter alia, on *Bradley* v. *Scully* (1967) 255 Cal.App. 2d 101 [62 Cal.Rptr. 834].

■ It is "established ... that when a husband and wife homestead joint tenancy property, each spouse waives the right to set aside his separate interest by partition, *loses the right to unilaterally convey or*

*devise the property* and also loses the right to terminate the homestead except by the mode provided in the Civil Code. [Citations.]" (*Id.*, at p. 105, italics supplied.) The reason for the rule as set forth in *Bradley* and in the authorities therein cited centers around the rights of survivorship which were, prior to the 1980 amendments, an integral part of a declared homestead of married persons. A close reading of the *Bradley* case discloses that it does not hold that the joint tenancy may not be terminated by one spouse except inferentially and then only because of the then prevailing concepts regarding joint tenancy mysticism. The *Bradley* statement concerning the devisability of joint tenancy applies, of course, to any property so held whether or not it is the subject of a homestead. The *Bradley* court was protecting and perpetuating the survivorship incidents of declared homesteads, but the rule there announced is no longer necessary because of the Legislature's abrogation of that feature of the homestead law. "When the reason of a rule ceases, so should the rule itself." (Civ. Code., § 3510.)

Respondent contends that the action of the decedent in terminating the joint tenancy threatened the existence of the homestead. Respondent bases his conclusion on the fact that the decedent's will devised her one-half interest in the property to a third party. The result thereof, he maintains, would permit the homestead to become encumbered by the death of the decedent because at that time the devisee could bring an action for partition forcing a sale of the homestead. Respondent's argument is fallacious in that the 1980 amendments to the homestead laws effectively provide for the termination of the declared homestead upon the death of one of the spouses. Prior to the 1980 changes, Civil Code section 1265 provided in pertinent part, "the land so selected [the homestead], on the death of either of the spouses, vests in the survivor . . . ." Probate Code section 660 required that the probate court "must set apart the homestead selected by the spouses, or either of them, and recorded while both were living . . .," and Probate Code section 663 provided that the homestead vested absolutely in the survivor upon the death of the other spouse.

As a result of the legislative changes, the declared homestead does not survive the death of one of the spouses. As amended in 1980, Civil Code section 1265 no longer contains the quoted provision, and Probate Code sections 660 and 661 clearly indicate that a probate homestead is discretionary and that it *may* be selected from property other than the homestead, if any, selected by the spouses while they were living. (Prob. Code, § 660, subd. (b)(2); § 661, subd. (b).) Further, the provision in

former Probate Code section 660 that the court "must set apart the homestead selected by the spouses" was deleted from the reenacted statute, and that section now provides that the court may *in its discretion* "Select and set apart one homestead in the manner provided . . . ." Also, Probate Code section 663 as it existed prior to 1980 was repealed.

Thus, the action of decedent in terminating the joint tenancy did not destroy the homestead; it persisted until the time of her death. The homestead of decedent was, however, terminated upon the death of the decedent by operation of law, not because of the act of decedent, but because of the modifications made in the homestead law by the Legislature. The repeal of the survivorship feature was specifically made applicable to homesteads that preexisted the effective date of chapter 119 by section 22, subdivision (a) thereof, which provides, "A homestead declared and recorded prior to the effective date of this act pursuant to Sections 1237 through 1304, inclusive, of the Civil Code shall, on the effective date, cease to have effect for the purpose of survivorship rights."

Respondent argues that the manner employed by decedent in terminating the joint tenancy is prohibited by section 1242 of the Civil Code,[1] which provides that a homestead of a married person cannot be conveyed unless, "The instrument by which it is conveyed or encumbered is executed and acknowledged by both husband and wife." (Civ. Code, § 1242, subd. (a)(1).) It was held in the venerable case of *Freiermuth* v. *Steigleman* (1900) 130 Cal. 392 [62 P. 615] that, "The purpose of the law [Civ. Code, § 1242] is to place it beyond the power of either spouse, acting alone, to destroy the homestead character impressed upon the real estate or encumber it in any way." (*Id.*, at p. 394.) Again, it was stated in *Ainsworth* v. *Morrill* (1916) 31 Cal. App. 509 [160 P. 1089] that, "The policy and purpose of section 1242 of the Civil Code is to prevent the destruction or encumbrance of a

---

[1]Civil Code section 1242 provides: "(a) Except as provided in Section 1243.5, and except in the case of a married person's separate homestead, the homestead of a married person cannot be conveyed or encumbered unless: [¶] (1) The instrument by which it is conveyed or encumbered is executed and acknowledged by both husband and wife; or [¶] (2) Each spouse executes and acknowledges a separate instrument so conveying or encumbering the homestead in favor of the same party or the party's successor in interest. [¶] (b) Notwithstanding subdivision (a), a conveyance of the homestead between husband and wife need be executed and acknowledged only by the spouse conveying; and, unless the one conveying expressly reserves his or her homestead rights, the spouse to whom the conveyance is made may convey or encumber the homestead property in the same manner and to the same extent as though no homestead had been declared."

homestead by either spouse acting alone ...." (*Id.,* at p. 510.) As is conceded by respondent, the only intention of the decedent in quitclaiming the property to a straw man in exchange for a quitclaim deed back to her was to convert the joint tenancy into a tenancy in common so that she might control the devolution of her interest in the property upon her death. Her action was in no sense an attempt to terminate, destroy, or encumber the homestead. More importantly, she certainly did not intend to nor did she convey her interest in the property.

Our law has progressed greatly since the rigid, formalistic rules of conveyancing were formulated during feudal times. The common law concept of a joint tenancy requiring the joint unities of time, title, interest, and possession has not been literally adhered to in California. By statute, we have abrogated the requirement that joint tenants receive title simultaneously and by means of the same conveyancing instrument. Civil Code section 683 permits a joint tenancy to be created by conveyance from the owner of property to himself and to others or from joint owners to themselves and others. Still, it has been deemed an indispensable element in the termination of a joint tenancy for one of the tenants to deed out and then receive a deed back. This fiction was still believed to be indispensable in *Clark* v. *Carter* (1968) 265 Cal.App.2d 291 [70 Cal.Rptr. 923]. The *Clark* court reasoned that this was so because for a deed to be efficacious it was essential that the transfer of property be from one living person to another (Civ. Code, § 1039) and quite impossible for a person to convey to himself. (*Id.,* at pp. 295-296.) Neither the appellant nor the court conceptualized the change of the manner in which title to real property is held to be other than a "transfer." This ritualistic requirement of a fictional reciprocal transfer was abandoned by a more pragmatic court in *Riddle* v. *Harmon* (1980) 102 Cal.App. 3d 524 [162 Cal.Rptr. 530, 7 A.L.R. 4th 1261]. "We discard the archaic rule that one cannot enfeoff oneself which, if applied, would defeat the clear intention of the grantor." (*Id.,* at p. 531.) The court held that a joint tenancy may be terminated by a variety of circuitous processes, but went on to say, "We reject the rationale of the *Clark* case [*Clark* v. *Carter, supra,* 265 Cal.App.2d 291] because it rests on a common law notion whose reason for existence vanished about the time that grant deeds and title companies replaced colorful dirt clod ceremonies as the way to transfer title to real property. One joint tenant may unilaterally sever the joint tenancy without the use of an intermediary device." (*Riddle* v. *Harmon, supra,* 102 Cal.App.3d 524, 531.)

By eliminating all survivorship rights pertaining to homesteads, the Legislature has indicated its intent to allow spouses to choose the form of title in which homestead property is held. It is clear that the reason for the prohibition in Civil Code section 1242 was to prevent the destruction, termination, or encumbrance of the homestead. If the survivorship feature of Civil Code section 1265 had remained intact, then the termination of a joint tenancy would have, at least prospectively, threatened the existence of the homestead because of its termination of the right of survivorship. As the right to survivorship no longer exists, the termination of the joint tenancy merely changes the form of ownership and permits the cotenant to exercise his right to make a testamentary disposition of his property.

There is no reason to adhere to a rule which, by a change in the law, has been rendered obsolete. "The literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole. [Citations.]" (*Silver* v. *Brown* (1966) 63 Cal.2d 841, 845-846 [48 Cal.Rptr. 609; 409 P.2d 689].) "Substance rather than form should be considered if strict adherence to form would result in injustice, or absurd or unjust results would follow from a literal interpretation of the language. [Citations.]" (*Smith* v. *Mt. Diablo Unified Sch. Dist.* (1976) 56 Cal.App.3d 412, 420 [128 Cal.Rptr. 572].)

The mere fact that decedent chose to terminate the joint tenancy by the archaic method of exchanging deeds with a straw man, rather than by the recently approved method of executing a deed from herself as a joint tenant to herself as a tenant in common, must not be permitted to frustrate her intent. An action should be recognized for what it is and not for what it merely appears to be.

■ We hold that the decedent did not intend to and did not injure, destroy, terminate, or encumber the homestead by exchanging deeds with the straw man. We hold that she did not intend to and did not "transfer" her title to the property, but rather that she intended to and did convert a joint tenancy to a tenancy in common. ■ We further hold that cotenants of property that has been homesteaded retain their rights to change the manner in which they hold title to the property, either jointly or unilaterally, and that the exercise of such rights, either jointly or independently, does not in any manner affect the homestead. ■ Therefore, the trial court was in error in finding that the joint ten-

ancy was in existence at the time of the death of decedent and in declaring respondent to be the surviving joint tenant thereof.

The judgment is reversed.

Hanson (Thaxton), Acting P. J., and Soven, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 13, 1982.

---

*Assigned by the Chairperson of the Judicial Council.