[Civ. No. 2647.   Fourth Dist.—July 7, 1941.]

MAX REISS, as Special Administrator, etc., Plaintiff and Appellant, v. MOSES REISS, Respondent; MAX REISS, Individually, Intervener and Appellant.

Swaffield & Swaffield, Kenneth Sperry and Joseph E. Madden for Appellants.

Mark F. Jones, Sydney Tannen and W. L. Engelhardt for Respondent.

CONWAY, J., *pro tem.*—This is an appeal from a judgment against plaintiff and intervener in an action seeking declara-

tory relief, the rescission or cancellation of conveyances and to quiet title.

Max Reiss and Rosa Reiss were married and had lived together for more than twenty-five years prior to Rosa's death in January, 1936. They accumulated considerable real and personal property during their married life. They held title to this property as joint tenants with the right of survivorship.

Moses Reiss and Bernard Reiss are the sons of Rosa Reiss and the stepsons of Max Reiss.

In December, 1933, Rosa suffered a paralytic stroke which impaired her mental and physical capacities. These disabilities continued up to the time of her death.

In January, 1935, Rosa went to her son Moses, telling him that her husband Max had told her to get out of their home and stay away. She stayed with Moses at his home for several days. Rosa and Moses went to the office of an attorney. She told him she desired to break the joint tenancy in the property existing between Max and herself. The attorney prepared a deed conveying Rosa's interest in the real property to Moses and also assignments of her interest in their securities. She also signed a letter addressed to Moses asking him to accept and hold title to the properties in trust for her. Moses accepted the trust in writing. Rosa also executed a will which left $1.00 to her husband Max and the balance of her property equally to her two sons, Moses and Bernard. It was there stated: "I am only leaving my husband a dollar, because in my judgment he has plenty, as he has his interest in our property acquired since my marriage to him." The will had been prepared in August, 1934, as a result of her former visit to the office of the same attorney, but it was not executed until January, 1935.

Max, as guardian *ad litem* of Rosa, filed this action on January 28, 1935, attacking these conveyances made by Rosa. Max was appointed and qualified as the guardian of the estate of Rosa on March 4, 1935, and was substituted in the action as such guardian in the place and stead of the guardian *ad litem*. Rosa died on January 12, 1936, and Max was appointed as special administrator of her estate. He was substituted as such plaintiff in the action. He also filed a complaint in intervention which followed closely the allegations

of the complaint and in which he also claimed title to the property as the sole survivor of the joint tenancy.

Moses came to California in 1926, at which time he learned of the joint tenancy in the property of Max and his mother. He took his mother to interview various attorneys when means of dissolving the joint tenancy were discussed and Mrs. Reiss was informed of the various methods of accomplishing this result. Moses is accused of undue activity in this regard and with the attempt to unduly influence his mother to break the joint tenancy, so that he and his brother could profit from the property at the expense of the husband, Max. Moses, of course, maintains that he was merely helping his mother carry out her freely formed intent and expressed desire of permitting her sons to benefit from her part of the accumulations of herself and her husband.

The first ground urged for a reversal of the judgment is lack of evidentiary support of the findings that (1) Rosa was mentally competent in January, 1935, when she executed the deed and assignments, and (2) that she was not acting under the undue influence of Moses at that time.

The evidence on the mental capacity of Rosa is sharply conflicting. It is undisputed that although uneducated she was mentally keen and vigorous prior to her paralytic stroke. There is rather strong evidence that thereafter she was mentally incompetent and unable to understand the nature and effect of her acts. On the other hand, there is other evidence that while she was not as mentally alert as she had been, she possessed sufficient mentality to comprehend the nature and effect of her acts and to form her own opinions and to act upon them.

This sharp conflict in the evidence was addressed to the trier of fact in the first instance. He alone is permitted to weigh the evidence, determine the effect of the conflicts and judge the credibility of the witnesses. The trial judge resolved these conflicts in the evidence in favor of defendant and there is substantial evidence in the record supporting his findings on this issue.

A judgment will not be reversed on the first ground urged where there is substantial evidence supporting the findings although different inferences rationally might have been drawn therefrom. (*McDermot* v. *Hayes*, 175 Cal. 95 [170

Pac. 616].) Findings of the character involved here may be overthrown on appeal only in those cases where they totally lack the support of substantial evidence. (*Dunphy* v. *Dunphy*, 161 Cal. 380 [119 Pac. 512, Am. Cas. 1913B, 1230, 38 L. R. A. (N. S.) 818].) Further, as said by the Supreme Court in *Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421 [213 Pac. 42, 26 A. L. R. 123] :

"In so far as the evidence is subject to opposing inferences, it must upon a review thereof be regarded in the light most favorable to the support of the judgment (*Woodard* v. *Glenwood Lumber Co.*, 171 Cal. 513, 519, 520 [153 Pac. 951]; *Hassell* v. *Bunge*, 167 Cal. 365, 367 [139 Pac. 800]). 'In reviewing a question of this kind, all the inferences reasonably possible from the evidence favorable to the plaintiff [the prevailing party] must be indulged by this court.' (*Bandle* v. *Commercial Bank of Los Angeles*, 178 Cal. 546, 547 [174 Pac. 44, 45].)"

As there is substantial evidence in the record supporting the findings of the trial court to the effect that Rosa Reiss was mentally competent at the time she executed the documents in question here, those findings are final and conclusive and may not be disturbed on this appeal.

It is next claimed that the findings of the trial court to the effect that Rosa was not acting under the undue influence of Moses are not supported by the evidence. The confidential relationship which existed between parent and child required the trial judge to weigh the evidence with the utmost scrutiny in order to determine the matter in accordance with equity and fair dealing. (*Cox* v. *Schnerr*, 172 Cal. 371 [156 Pac. 509].) Appellant cites numerous authorities to the effect that where the grantor is old and infirm and the grantee is a child who is in a position to exert undue influence upon the grantor, and who profits from the transaction, the burden is upon the grantee to negative the existence of undue influence. In the present case the child, Moses, held the bare legal title to the properties and they were transferred to him as trustee for the benefit of the grantor, Rosa Reiss. Since the entire beneficial interest under the conveyances remained in the grantor and the grantee did not unduly benefit from the transfers to him, the conclusion naturally follows that no presumption of undue influence should be indulged in here.

The evidence clearly establishes that Rosa wanted her half interest in the property vested in her and that she distinctly understood the conveyances were made to her son for the express purpose of breaking the joint tenancies. Respondent cites a conversation between Rosa Reiss and her former attorney in the presence of appellant from which it convincingly appears that she had a clear conception of the nature of the transactions and comprehended the nature and character of the conveyances. She stated that she wanted her half of the property in her name and that she realized the joint tenancy was broken for this purpose. It is significant that appellant was present during this conversation and knew of her wishes and when directly asked if her interest in the property should go to her sons upon her death, replied, "that's up to her."

The most that may be said of the evidence respecting undue influence is that Moses Reiss had the opportunity to influence his mother, coupled with a desire to break the joint tenancy in order that she might be free to make any disposition of her property she desired. This will not sustain a finding of undue influence. (*Estate of Fleming*, 199 Cal. 750 [251 Pac. 637].) It is not sufficient to prove circumstances consistent with the exercise of undue influence but the circumstances must be inconsistent with voluntary action on the part of a testator or grantor. (*Estate of Presho*, 196 Cal. 639 [238 Pac. 944]; *Estate of Morcel*, 162 Cal. 188 [121 Pac. 733].) The voluntary nature of the execution of the instruments by the deceased clearly appears from the evidence, and the findings of the trial judge thereon cannot be disturbed on appeal.

Appellant contends that the court erred in refusing to quiet title to the properties in plaintiff for the reason that the deed and assignments passed no title, having been made pursuant to a void trust. He contends the instruments were inoperative and void because of the indefiniteness and uncertainty of the trust. The trust receipt, or letter, signed by the deceased and addressed to her son Moses, bitterly complained of her treatment by appellant and recited her desire to break the joint tenancy. The instrument recited: "I am deeding you all of my property, and I am asking you to accept it in Trust for my benefit, and if I ask you to deed it back to me, or to otherwise convey it, or incumber it for my benefit or let me do it, then I want you to do it. If you will accept this

deed (which I have told my attorney to draw) to you this day, under these conditions, and will not charge me for accepting the deed, or doing this, then I will ask you to accept this deed, under these express conditions.'' This letter had attached to it the acceptance of the trust by Moses Reiss wherein he stated he accepted delivery of the deed and the assignments, ''under the above conditions.''

Appellant contends the trust is void for the reason that it is vague and uncertain as to the duties of the trustee, the duration of the trust and the purpose or object of the same. He cites several authorities in support of this contention. Many of those cases arose prior to 1929 when only such trusts could be created as were permitted under section 857 of the Civil Code. ■ Express trusts may now be created for any purpose for which persons may lawfully contract. It seems clear that the property was to be held by Moses in trust for his mother and that he was to convey the property to her or to whomever she selected at any time upon her demand. A trust to convey property is now valid and a grant upon a trust to convey creates an express trust. ■ Therefore, the declaration of trust met the requirements of the statute when it showed that the property had been conveyed in trust for the purpose of reconveying the same at the request of the trustor. This purpose was stated in the instruments constituting the trust agreement and the property was identified by the deed and assignments, and the conditions were accepted by the trustee. It is also clear that the duration of the trust was limited to the lifetime of the trustor.

■ Appellant, finally, contends that the court erred in concluding that the conveyances in question terminated the joint tenancies. It is admitted that a joint tenancy may be terminated by a transfer without condition to a third party but appellant maintains that a joint tenancy may not be terminated by a transfer by one joint tenant to a trustee for the use and benefit of the grantor.

The trustee, while required to exercise no active duties, was obligated to reconvey the property to the grantor upon demand or to otherwise incumber it for the benefit of the grantor. No California case has been cited holding that a transfer of the legal title under the precise circumstances here presented fails to break the joint tenancy. Appellant cites the English case of *Edwards* v. *Champion* (1853), 43 Eng.

Rep. 80, which holds that a conveyance to the use of the will of another would be ineffective to terminate a joint tenancy but the chancellor expressly withheld an opinion on the precise problem presented upon this question on this appeal by the following language: "It is unnecessary for me to give an opinion upon the question whether a surrender by a joint tenant to the use of *his will* effects a severance." ██ Joint tenancies were favored at the common law but California has adopted an opposite rule. (Secs. 683 and 686, Civil Code; *Swartzbaugh* v. *Sampson,* 11 Cal. App. (2d) 451 [54 Pac. (2d) 73].)

██ For the lawful creation of a joint tenancy it is necessary that there be the four unities of interest, of title, of time and of possession. (*Siberell* v. *Siberell,* 214 Cal. 767 [7 Pac. (2d) 1003].) "An estate in joint tenancy can be severed by destroying one or more of the necessary unities. . . . " (*Swartzbaugh* v. *Sampson, supra.*) ██ It seems clear that two or more of these unities were destroyed by the conveyance and assignments and the creation of the trust. It should follow that the joint tenancy was thereby destroyed and that a tenancy in common succeeded it.

We are of the opinion that the clearly expressed desire of Rosa Reiss to terminate the joint tenancy arrangement was effectively accomplished by the transfer of the legal title to her son for her expressed specific purpose of having the control and the right of disposition of her half of the property.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 28, 1941.