Noah TAYLOR, as personal represen-
tative of the Estate of Terrell
Taylor, Petitioner

v.

Lucy I. CANTERBURY, Respondent.

No. 03SC294.

Supreme Court of Colorado,
En Banc.

June 28, 2004.

Frederickson & Johnson, P.C., Bryan T. Fredrickson, Canon City, Colorado, Attorneys for Petitioner.

Dufford & Brown, P.C., Joanne Herlihy, Denver, Colorado, Attorneys for Respondent.

Montgomery Little & McGrew, P.C., Frederick B. Skillern, for Amicus Curiae for the Real Estate Law Section of the Colorado Bar Association.

Justice KOURLIS delivered the Opinion of the Court.

## I. INTRODUCTION

The question we address in this case is whether one joint tenant may extinguish a joint tenancy by conveying his interest in real property back to himself as a tenant in common. In the past, courts did not honor such transactions because of two premises: one, that someone could not be both a grantor and a grantee in the same real property transaction; and two, that in order to extinguish a joint tenancy, a joint tenant had to destroy one of the "four unities" of time, title, interest, or possession.

What is not at issue in this opinion is whether a joint tenant may destroy a joint tenancy without the consent of the other joint tenant or tenants. It is indisputable under Colorado law that one joint tenant may unilaterally dissolve the survivorship interest by creating a tenancy in common in lieu of a joint tenancy. However, for a joint tenant to sever the joint tenancy yet remain an owner of the property, courts required the use of a "strawman" transaction whereby the joint tenant executed a deed to a third person, and then a deed back from that third person to the joint tenant—this time as a tenant in common. By transferring legal title to the property held in joint tenancy to a third party, the transferor destroyed the unities of time and title and severed the joint tenancy.

We conclude that this circuitous process is no longer required under Colorado law because the two premises undergirding it are no longer valid. In Colorado and other jurisdictions around the country, joint tenancy law has evolved. The four unities are no longer the compass; rather, the polestar by which joint tenancies are now measured is the intent of the parties. For this reason, we have recognized in recent cases that acts inconsistent with the right of survivorship operate to sever the joint tenancy. Similarly, by operation of statute, the notion that a property owner may not be both the grantor and grantee in the same transaction has evaporated. Currently, the owner of real property may create a joint tenancy by conveying real property back to himself and one or more persons as joint tenants. Hence, the common law notions that once drove the jurisprudence of joint tenancy are gone. In their place are principles that focus on the intent of the property owners.

Therefore, we find no common law or legislative support for preventing a landowner from doing directly what he can do indirectly. We hold that a joint tenant who unilaterally conveys his interest in real property back to himself, with the intent of creating a tenancy in common, effectively severs the joint tenancy as to that joint tenant and the remaining

joint tenant or tenants. We reverse the court of appeals and remand the case for further proceedings consistent with this opinion.

## II. FACTS AND PROCEDURAL HISTORY

Terrell Taylor (Taylor) was the owner in fee simple of a 666–acre ranch in Fremont County, Colorado.[1] The Petitioner, Noah Taylor, is the personal representative for Taylor, now deceased. On March 4, 1991, Taylor executed a warranty deed that conveyed that property from Taylor as sole owner to Taylor and Lucy I. Canterbury (Canterbury) as joint tenants. The validity of that deed is not in dispute.

In 1997, Taylor executed a second deed: this time a quitclaim deed purporting to transfer the property back to himself and Canterbury as tenants in common. Taylor's manifest intent to sever the joint tenancy between himself and Canterbury, and to create a tenancy in common, could not have been clearer. The second deed stated: "It is my intention by this deed to sever the joint tenancy created by [the 1991 deed], and to create a tenancy in common." The deed was duly recorded on June 16, 1997—the same day it was executed. Taylor died on August 20, 1999.

Canterbury filed an action to quiet title to the property to herself as surviving joint tenant. In that complaint, she also asked the trial court to set aside the 1997 conveyance and award her damages arising out of Taylor's attempted conveyance. Following a bench trial, the trial court found that "as a matter of law, the right of survivorship interest of a joint tenant is an estate in land which vests on the creation of the joint tenancy." Relying on our decision in *Lee's Estate v. Graber*, 170 Colo. 419, 462 P.2d 492 (1969), the court concluded "that the rights of a joint tenant or joint tenants are vested and fixed at the time of the creation of the joint tenancy" and therefore the 1997 deed failed to effectively sever the joint tenancy between Canterbury and Taylor. On that basis, the court determined that "all interests which

Taylor owned . . . at the time of his death passed to [Canterbury] pursuant to the 1991 deed."

The court of appeals affirmed the trial court's judgment in *Canterbury v. Taylor*, 74 P.3d 457 (Colo.App.2003), holding that a joint tenant cannot effectively sever a joint tenancy by executing a deed which purports to convey title back to the two individuals as tenants in common. *Id.* at 459. Like the trial court, the court of appeals also relied on our decision in *Graber* to conclude that once a joint tenancy is created, the rights of each joint tenant are "fixed and vested." *Id.* Thus, the court concluded that Taylor's unilateral effort to sever the joint tenancy was an improper "form of dominion" over Canterbury's rights to the property. *Id.* The court also noted that Taylor's conveyance to himself was contrary to the general rule that a grantor and grantee cannot be the same person for purposes of conveying property. *Id.*

We granted certiorari to address the issue of whether it is "permissible for a joint owner of real estate to sever the joint tenancy by unilaterally conveying his interest in the property back to himself to create a tenancy in common with the other joint tenant." We answer that question in the affirmative. Therefore, we reverse the court of appeals and remand this case for further proceedings consistent with this opinion.

## III. ANALYSIS

■ This case presents an issue of first impression in Colorado: whether the holder of an interest in joint tenancy may unilaterally sever that joint tenancy by conveying property back to himself as a tenant in common. We begin our analysis by discussing the basic characteristics of the two forms of concurrent ownership implicated in this case: tenancies in common and joint tenancies. Next, we analyze the law regarding the termination of joint tenancies in Colorado. Finally, we examine the specific subject of the validity of the transaction at issue in this case and conclude that, in light of the evolution of joint tenancy law in Colorado and

---

1. The facts in this case are undisputed and come to this court by stipulation of the parties.

other jurisdictions throughout the country, the common law principles that once supported the prohibition against a unilateral self-conveyance no longer have vitality.

## A. Tenancy in Common and Joint Tenancy

A tenancy in common is a form of ownership in which each co-tenant owns a separate fractional share of undivided property. *United States v. Craft*, 535 U.S. 274, 279–80, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002) (citing to 7 R. Powell & P. Rohan, Real Property § 50.01[1] (M. Wolf ed.2001) (hereinafter Powell)). All co-tenants share a single right to possession of the entire interest. 7 Powell, *supra*, § 50.01[1]. Each co-tenant also possesses the right to: unilaterally alienate his or her interest through sale, gift or encumbrance; to exclude third parties from the property; and to receive a portion of any income derived from the property. *Craft*, 535 U.S. at 280, 122 S.Ct. 1414.

Conversely, joint tenancy is a form of ownership in which each joint tenant possesses the entire estate, rather than a fractional share. *Id.* Upon the death of one joint tenant, the remaining joint tenant or tenants automatically inherit that tenant's share in the property. *Id.* ("Upon the death of one joint tenant, that tenant's share in the property does not pass through will or the rules of intestate succession; rather, the remaining tenant or tenants automatically inherit it."). This feature, called the "right of survivorship," is the principal distinction between a joint tenancy and a tenancy in common. *Bradley v. Mann*, 34 Colo.App. 135, 525 P.2d 492, 493 (1974) ("Upon the death of one of the co-tenants in joint tenancy, the entire undivided interest of the deceased passes, by operation of law, to the surviving co-tenant.").

At common law, joint tenancies were the favored form of concurrent ownership of real property. *Smith v. Greenburg*, 121 Colo. 417, 218 P.2d 514, 519 (1950). If property was conveyed to two or more persons, the law presumed that a joint tenancy was intended. 4 David A. Thomas, Thompson on Real Property § 31.06(a) (David A. Thomas ed.1994) (hereinafter Thompson). For pur-

poses of establishing a joint tenancy, the "four unities" of time, title, interest, and possession were essential components. 7 Powell, *supra*, § 51.01[2] (citing to 2 Blackstone, Commentaries 180); *see also Tabor v. Sullivan*, 12 Colo. 136, 20 P. 437, 441 (1889) (Elliott, J., concurring) (noting that joint tenancies require the four unities of time, title, interest, and possession). This requirement meant that to create a joint tenancy, "a conveyance had to convey to two or more persons at the same time the same title to the same interest with the same right of possession." 7 Powell, *supra*, § 51.01[2]. If one of the four unities ceased to exist, a tenancy in common remained. *Riddle v. Harmon*, 102 Cal.App.3d 524, 162 Cal.Rptr. 530, 531 (1980).

Today, in Colorado, joint tenancies are no longer the presumptive form of concurrent ownership of real property. *Greenburg*, 218 P.2d at 519. Rather, tenancies in common are favored and the very existence of the joint tenancy is circumscribed by statute. *Id.* Courts strictly construe instruments purporting to create a joint tenancy and do not recognize joint tenancies created by instruments that lack statutorily prescribed language. *In re Kwatkowski's Estate*, 94 Colo. 222, 29 P.2d 639, 640 (1934).

The requirements for establishing a joint tenancy in real property are set forth in section 38–31–101(1), 10 C.R.S. (2003). That provision states:

No estate in joint tenancy in real property, except when conveyed or devised to executors, trustees, or fiduciaries, shall be created or established unless, in the instrument conveying the property or in the will devising the same, it is declared that the property is conveyed or devised in joint tenancy or as joint tenants. The abbreviation "JTWROS" and the phrase "as joint tenants with right of survivorship" or "in joint tenancy with right of survivorship" shall have the same meaning. Any grantor in any such instrument of conveyance may also be one of the grantees therein.

Thus, to establish a joint tenancy in Colorado, there must only be specific language evidencing the intent to create a joint tenancy.

The four unities have been abolished by statute.

## B. Termination of Joint Tenancies

We turn to the question of how a joint tenancy may be terminated. In that inquiry, we pause to address the notion that the interests associated with the ownership of real property held in joint tenancy are fixed and vested. That principle comes most recently from our decision in *Lee's Estate v. Graber* where we addressed the issue of whether "the gift of a joint interest in real estate held jointly with the donor is complete and irrevocable." 462 P.2d at 493. Answering that question affirmatively, we held that "[i]n the case of real property, rights under a joint tenancy are fixed and vested in the joint tenants at the time of the creation of the joint tenancy." *Id.* at 494. As a result, once a donor creates a joint tenancy, he or she may not convey or otherwise interfere with the property interests vested in the other joint tenant by virtue of the conveyance. *Id.; see also First Nat'l Bank of Southglenn v. Energy Fuels Corp.*, 200 Colo. 540, 618 P.2d 1115, 1118 (1980) ("A joint tenant cannot alienate, encumber, or transfer the interest of other joint tenants without their consent."). What *Graber* restates is the axiom that once a joint tenancy is created, each joint tenant owns a vested interest in the property, which cannot be extinguished or alienated without that particular tenant's consent.

■■■ *Graber* does *not* hold that the right of survivorship itself is irrevocable or "fixed and vested" and cannot be eliminated without the consent of the other joint tenant or tenants. Indeed, such a holding would fly in the face of years of precedent to the contrary. Even characterizing survivorship as a "right" is somewhat misleading. Rather, survivorship is

> an expectancy that is not irrevocably fixed upon the creation of the estate; it arises only upon success in the ultimate gamble—survival—and then only if the unity of the estate has not theretofore been destroyed by voluntary conveyance, by partition proceedings, by involuntary alienation under an execution, or by any other action which operates to sever the joint tenancy.

*Tenhet v. Boswell*, 18 Cal.3d 150, 133 Cal. Rptr. 10, 554 P.2d 330, 334 (1976) (internal citations omitted). Thus, in order for an expectancy of a survivorship interest to become a vested right, one joint tenant must survive the death of another joint tenant during the period of time that the joint tenancy remains intact.

■■■ Hence, the right of survivorship is not fixed in such a way as to constrain a joint tenant from changing his mind and abrogating it. Rather, a joint tenant may unilaterally eliminate the survivorship element of the ownership rights, and by doing so, eliminate his own survivorship rights as well.[2] Stated otherwise, a joint tenant has the absolute right to terminate a joint tenancy unilaterally. *Carmack v. Place*, 188 Colo.

---

**2.** We are aware that the ability of one joint tenant to sever the tenancy risks a circumstance where a joint tenant may terminate the survivorship right of other co-tenants while retaining his or her own. For example,

> [a] joint tenant may execute an undisclosed severance, deposit the severing instrument with a third person, and instruct the third person to produce the instrument if the severing joint tenant dies first so the severed half may pass to his or her heirs or devisees. However, if the other joint tenant dies first, the secret severing instrument may be destroyed so that the surviving joint tenant will take the other half of the property by survivorship, thereby becoming owner of the entire property.

*England v. Young*, 233 Cal.App.3d 1, 284 Cal. Rptr. 361, 363 (1991); *see also* Samuel M. Fetters, *An Invitation to Commit Fraud: Secret De-* struction of Joint Tenant Survivorship Rights, 55 Fordham L.Rev. 173, 179 (1986). However, the possibility of such concealment exists even with the strawman requirement. We do note that after California abolished the strawman requirement in *Riddle v. Harmon*, 102 Cal.App.3d 524, 162 Cal.Rptr. 530, (1980), the California General Assembly took the opportunity to enact legislation to close this loophole. Specifically, California passed legislation requiring that all instruments purporting to unilaterally sever a joint tenancy be recorded for purposes of providing other joint tenants with constructive notice of the severance. *See England*, 284 Cal.Rptr. at 363–64; Cal. Civ.Code § 683.2 (West 2004). In the case before the court today, Taylor did record the severance deed, so we do not opine on whether the failure to do so would have made a difference.

303, 535 P.2d 197, 198 (1975); *see also* 7 Powell, *supra,* § 51.04[1].

In this case, therefore, we are not dealing with whether a joint tenant may sever the tenancy and create a tenancy in common; we are dealing with the question of how that can be accomplished. Historically, whether the severance of a joint tenancy was effective turned on the question of whether the act was sufficient to destroy any of the four unities. *Bradley,* 525 P.2d at 493. Thus, conveying the property to a third party,[3] transferring legal title into a trust,[4] executing a lien,[5] or foreclosing on a mortgage,[6] were all considered to be effective means of severing a joint tenancy. We also specifically recognized the antiquated convention whereby the joint tenant wishing to terminate a joint tenancy would convey the property to a strawman who would in turn reconvey the property back to the former joint tenant as a tenant in common. *Alden v. Alden,* 155 Colo. 51, 393 P.2d 5, 6 (1964). The rationale underlying all of these transactions was that because legal title was transferred, the unities of time and title were destroyed, and therefore the joint tenancy, and the survivorship interest associated with it, were destroyed as well.

Along these same lines, mortgages,[7] leases,[8] and other encumbrances[9] that did not involve the transfer of legal title were considered insufficient to sever a joint tenancy. Again, the underlying rationale was that because the grantor had not transferred title to the real property, the unities remained intact and the transaction did not sever the joint tenancy.

In stark contrast to traditional common law, "[t]he modern tendency is to not require that the act of the co-tenant be destructive of one of the essential four unities of time, title, possession or interest before a joint tenancy is terminated." *Mann v. Bradley,* 188 Colo. 392, 535 P.2d 213, 214 (1975). In *Mann,* we recognized that a joint tenancy may be terminated by mere agreement between the joint tenants, despite the fact that no property is conveyed or interests alienated. *Id.* Thus, in determining whether a joint tenancy has been created or severed, we look not to the four unities, but rather to the intent of the parties. *Id.* at 214–15; *see also Mangus v. Miller,* 35 Colo.App. 115, 532 P.2d 368, 369 (1974). Actions that are inconsistent with the right of survivorship may terminate a joint tenancy. *Mann,* 535 P.2d at 214–15.

### C. Unilateral Self–Conveyance

As we have noted, historically, a joint tenant wishing to sever the joint tenancy used a strawman transaction. That method satisfied the common law proscription that "a conveyance to oneself has no legal consequence and therefore does not destroy any unities." Thompson, *supra,* § 31.08(b). This "two-to-transfer" artifice stemmed from the

---

**3.** *See Carmack v. Place,* 188 Colo. 303, 535 P.2d 197, 198 (1975) ("It is well established that an owner in joint tenancy is free to convey his undivided share of property so held, and that upon conveyance by one joint tenant to a third party, the latter becomes a tenant in common with the remaining joint tenant(s).").

**4.** *See Reiss v. Reiss,* 45 Cal.App.2d 740, 114 P.2d 718, 722 (1941) (holding that the transfer of legal title of property held in joint tenancy to a trust effectively severed the joint tenancy).

**5.** *See First Nat'l Bank of Southglenn v. Energy Fuels Corp.,* 200 Colo. 540, 618 P.2d 1115, 1118 (1980) (holding that joint tenancy is severed when interest of joint tenant in real property is subject to execution and sale by a judgment creditor).

**6.** *See generally* 7 R. Powell & P. Rohan, Real Property § 51.04[1][c] (M. Wolf ed.2001).

**7.** Some authority supports the position that in a title theory state, the mere act of mortgaging a piece of property is sufficient to sever a joint tenancy because legal title to the property is actually transferred. 7 R. Powell & P. Rohan, Real Property § 51.04[1][c] (M. Wolf ed.2001). However, in lien theory states such as Colorado, *see* § 38–35–117, 10 C.R.S. (2003), merely mortgaging property does not transfer legal title and is therefore insufficient to sever a joint tenancy. *See* Powell, *supra,* § 51.04[1][c].

**8.** 7 R. Powell & P. Rohan, Real Property § 51.04[1][b] (M. Wolf ed.2001).

**9.** *See Webster v. Mauz,* 702 P.2d 297, 298 (Colo. App.1985) (stating that merely encumbering one's own interest in joint tenancy is insufficient to sever a joint tenancy).

English common law feoffment ceremony with livery of seisin. *Riddle*, 162 Cal.Rptr. at 533. Under the livery of seisin, the grantor of property had to transfer a physical remnant of the land (such as a lump of dirt or a twig) to the grantee. Therefore, the grantor could not be both grantor and grantee simultaneously.

In light of the changes to joint tenancy law in Colorado, the justifications for prohibiting unilateral self-conveyances no longer exist. For example, section 38–31–101 expressly allows the owner of property to become both the grantor and the grantee for purposes of establishing a joint tenancy. This concept directly conflicts with the four unities doctrine and the notion that one could not be a grantor and a grantee. Further, the livery of seisin requirement has been explicitly abolished in Colorado. § 38–30–103, 10 C.R.S. (2003). In short, none of the underpinnings that led to the artifice of a third-party transfer to sever a joint tenancy have continuing vitality.

Other jurisdictions have similarly concluded that it no longer makes sense to prohibit joint tenants from doing directly what they are already able to do indirectly through a strawman transaction. For instance, in *Hendrickson v. Minneapolis Fed. Sav. & Loan Ass'n*, 281 Minn. 462, 161 N.W.2d 688 (1968), the Supreme Court of Minnesota rejected the strawman requirement. The court in that case recognized the validity of a "Declaration of Election to Sever Survivorship of Joint Tenancy" by one joint tenant for purposes of severing the joint tenancy. *Id.* at 689.

Similarly, California has rejected the strawman requirement. *Riddle*, 162 Cal. Rptr. at 534. In that case, the court addressed a unilateral self-conveyance like the one at issue here. There, the court relied heavily on the fact that California, like Colorado, allowed for the creation of a joint tenancy by a self-conveyance. *Id.* at 532. In deciding that the grantor need not make use of a strawman to sever the joint tenancy, the court stated that "[i]n view of the rituals that are available to unilaterally terminate a joint tenancy, there is little virtue in steadfastly adhering to cumbersome feudal law requirements." *Id.* at 534. Quoting Justice Holmes, the court went on to state that

> [i]t is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.

*Id.*

Since *Harmon*, other states addressing this issue have followed suit. *See Minonk State Bank v. Grassman*, 95 Ill.2d 392, 69 Ill.Dec. 387, 447 N.E.2d 822, 825 (1983) (holding that conveyance of a joint tenant's property back to herself effectively severed the joint tenancy); *In re Estate of Knickerbocker*, 912 P.2d 969, 976 (Utah 1996) (holding that a joint tenant may effectively sever a joint tenancy by executing and recording a unilateral self-conveyance).

The exception is Nebraska. In *Krause v. Crossley*, 202 Neb. 806, 277 N.W.2d 242, 246 (1979), the Supreme Court of Nebraska disallowed the severance of a joint tenancy by a joint tenant who attempted to reconvey property to himself as tenant in common. That court specifically relied upon the notion that in order for title of property to transfer, the grantor and grantee had to be separate individuals. *Id.*[10]

We conclude, in light of Colorado's statutory and precedential approach to joint tenancy, that a joint tenant may sever a joint tenancy by conveying the property to himself or herself as a tenant in common, without the need for an intermediary strawman. The statute, which permits the grantor and grantee to be one and the same, and which bypasses the four unities, does not preclude such a termination of the joint tenancy. The underlying premises that gave rise to the fiction of the strawman transaction in the first place have disappeared in the law of real property; and the law does not require a futile act. *See generally Danielson v. Zoning Bd. of Adjust-*

---

**10.** We note, in passing, that the Nebraska General Assembly enacted legislation the year following *Krause* specifically allowing such unilateral self-conveyances. Neb.Rev.Stat. § 76–118(4) (2004).

*ment,* 807 P.2d 541, 543 n. 4 (Colo.1990). The strawman transaction does not protect the other joint tenant to any greater degree than the direct transfer, and, we repeat, the overriding consideration is that the survivorship interest is *not* vested.

## IV. CONCLUSION

We reverse the court of appeals and thus the trial court's conclusion that the deed from Taylor to Taylor as a tenant in common was not valid for purposes of severing the joint tenancy. Rather, we conclude that Taylor had the right to sever the joint tenancy by means of a conveyance to himself. Taylor retained an undivided one-half interest in the property as a tenant in common at the time of his death in 1999. We return this case to the court of appeals for remand to the trial court for proceedings consistent with this opinion.

Justice COATS dissents.

Justice COATS, dissenting.

Today the majority abrogates a limitation on the ability of a joint tenant to defeat his co-tenant's right of survivorship, which has been the law of this jurisdiction since before statehood. Following the lead of California, and a handful of other jurisdictions already doing so, the majority concludes, for the first time, that this venerable principle of property law—that a joint tenant may not unilaterally destroy the tenancy without alienating his own interest—no longer serves a useful purpose and has, in effect, already ceased to exist. Because I disagree with the majority's understanding of the current state of the law; its policy choice in derogation of the right of survivorship; and its decision to act in the face of existing (and I believe conflicting) legislation, I respectfully dissent.

The right of survivorship is an incident of, and in fact the defining incident of, a joint tenancy. *See* David A. Thomas, Thompson on Real Property, § 31.02 (David A. Thomas ed. 1981 & Supp.2003). To assert that it does not vest upon creation of the tenancy, as do all other incidents of joint tenancy, flies in the face of established law. *See, e.g., First Nat'l Bank of Southglenn v. Energy Fuels*

*Corp.,* 200 Colo. 540, 618 P.2d 1115 (1980) ("Rights in real property held in joint tenancy are fixed and vested in the joint tenants at the time of the creation of the tenancy."); *In re Estate of Lee v. Graber,* 170 Colo. 419, 462 P.2d 492 (1969) (same); *Smith v. Greenburg,* 121 Colo. 417, 218 P.2d 514 (1950) (same). While the right of survivorship is not "irrevocably fixed," *see Gwinn v. Comm'r of Internal Revenue,* 287 U.S. 224, 53 S.Ct. 157, 77 L.Ed. 270 (1932), in the sense that a joint tenant will not actually acquire title to the co-tenant's indivisible share of the property unless the co-tenant dies first, and unless he does so while the joint tenancy remains intact, it has never been within the power of one joint tenant in this jurisdiction, until today, to sever the tenancy and defeat his co-tenant's right of survivorship by merely executing a conveyance of his own indivisible interest in the property to himself.

We have not previously recognized the ability of a joint tenant to unilaterally terminate a joint tenancy except by divesting himself of his joint interest in it. While nothing has prohibited a former joint tenant from reacquiring, as a tenant in common, the proportionate share he formerly held as a joint tenant, his initial conveyance of that interest to a third party terminates the joint tenancy, once and for all. *See Alden v. Alden,* 155 Colo. 51, 393 P.2d 5 (1964). Although the majority derisively refers to a re-conveying third party as a "straw man," such a series of conveyances, regardless of any prior agreements or expectations of the parties, is in no sense a meaningless ritual or legal fiction.

To the contrary, until today, unless a joint tenant was actually divested of his interest in the property, whatever his hope or expectation concerning re-conveyance, the joint tenancy was not severed; and if the joint tenant retained an enforceable right of return, he had not been divested of his interest. As the majority acknowledges, this jurisdiction has never before found a severance to occur upon a mere encumbrance of property over which the tenant retained the right of repayment. *See Webster v. Mauz,* 702 P.2d 297 (Colo. App.1985) ("[M]ere encumbering of one's own interest in joint tenancy is insufficient to sever...."); *cf. Energy Fuels,* 618 P.2d at

1119 (joint tenancy is severed by operation of law upon execution sale, after default on deed of trust). Because conveyance to a third party always involves some risk, I disagree that the requirement to actually alienate one's interest provides no more protection to a joint tenant than re-conveyance to oneself, or that it amounts to nothing more than a fiction. *See* maj. op. at 967–968. Ironically, it is the conveyance of property to oneself that has all the earmarks of a fictitious transaction.

Nor do I find support for the majority's assertion that joint tenancy law in Colorado has evolved to a point at which "the polestar by which joint tenancies are now measured is the intent of the parties." Maj. op. at 962. The "modern tendency" with regard to the termination of joint tenancies, to which the majority alludes, *see* maj. op. at 966, apparently does not refer to unilateral action at all but rather derives from prior decisions finding an effective termination by the agreement of *both* co-tenants. *See Mann v. Bradley*, 188 Colo. 392, 535 P.2d 213 (1975)(property settlement associated with divorce proceedings); *Mangus v. Miller*, 35 Colo.App. 115, 532 P.2d 368 (1974) (same). And while the legislature has sought to avoid the unintended *creation* of rights of survivorship since before statehood, *see* 1861 Colo. Sess. Laws 66, it has never suggested the abrogation of existing restrictions on the termination of such rights. *See* § 38–38–101, 10 C.R.S. (2003).

To the extent that the majority's conclusion today is intended to represent an evolution of the common law, it ventures into a field long acknowledged to have been preempted by the legislature. *See Smith v. Greenburg*, 218 P.2d at 519 ("[T]he legislature has already pre-empted the field and declared the public policy with respect to the disposition of property held either in joint tenancy or descending under the statute of descent and distribution."). And to the extent that it intends its announcement today to rest on the construction of the statutes already regulating the area, I do not believe its conclusions are supported by accepted principles of statutory interpretation.

More than a half century ago, the general assembly modified the common law by abrogating the prohibition against creating a joint tenancy by the conveyance of a grantor, in part, to himself. *See* § 4, C.40 C.R.S. (1935). Because the current statute, § 38–31–101, 10 C.R.S. (2003), on its face, merely provides an exception to existing limitations for creating a joint tenancy, the majority finds nothing in that statute that would conflict with extending that same exception to severing a joint tenancy. *See* maj. op. 963. The maxim at law, however, is to the contrary. By expressly articulating one, and only one, exception to the long-accepted rule of property law, the legislature would normally be understood to have rejected other unarticulated exceptions. *See Beeghly v. Mack*, 20 P.3d 610, 613 (Colo.2001) ("*expressio unius exclusio alterius*"). A rule of strict construction is especially true of property statutes in derogation of the common law. *See A.L.H. Holding Co. v. Bank of Telluride*, 18 P.3d 742, 745 (Colo.2000).

In context, it seems clear enough that the legislature intended to, and did, eliminate a hurdle to the creation of a right of survivorship, as long as the right was created deliberately and with an unchallengeable understanding of the consequences. Eliminating a similar hurdle to the termination of the right of survivorship could easily have been accomplished at the same time by the legislature, had it intended to do so. Doing so without the same evidentiary safeguards, as the majority does today, runs directly counter to the clear legislative purpose. In light of the clear and settled state of the law on this point, it is not surprising that the issue has not before been squarely presented to this court.

The majority looks to other states for support, but even by its count, a mere handful of states have abrogated the requirement that the interest of a joint tenant be conveyed to another in order for severance of the joint tenancy to occur. Tellingly, of the extreme minority—a mere half-dozen or so—jurisdictions abrogating the requirement, either by case law or statute, virtually all include some recording requirement to ensure that notice

is at least possible, and to limit abuses.[1] Even if I considered the majority's policy choice to be sound, and even if I considered the court free to make that choice in light of existing legislation, I would nevertheless be reluctant to strike down well-established formalities without replacing them with other protections, as the legislature has done with regard to the creation of joint tenancies.

Because I believe the court's action in striking down a principle of property law accepted for scores, if not hundreds, of years and validated by our own legislature is neither wise nor the proper function of the judiciary, I respectfully dissent.

---

1. Although permitting termination of joint tenancies by a self-conveyance comports with a preference for effectuating intention, it does permit one joint tenant to attempt to gain an advantage over the other by executing the self-conveyance and delivering it to an heir or devisee with instructions to record it, but only if, the self-conveyor dies first, in which case the severance will be effective and the interest will pass by intestacy or devise; if the self-conveyor survives the other joint tenant, the self-conveyance can be suppressed and the survivor take all by right of survivorship. In consequence, some states require recording for effectiveness of self-conveyances.
Thomas, § 31.06(d), at 24.