# IN THE COURT OF APPEALS OF IOWA

No. 21-0556
Filed March 2, 2022

**RICHARD GROUT as Trustee of the HELEN SCHARDEIN 2018 REVOCABLE TRUST,**
    Plaintiff-Appellee,

**vs.**

**DAN R. SICKELS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Ringgold County, Michael Jacobsen, Judge.

Dan Sickels appeals a district court ruling on a petition for partition of real property and the award of net proceeds. **AFFIRMED.**

David J. Hellstern and J. Mason Bump (until withdrawal) of Sullivan & Ward, P.C., West Des Moines, for appellant.

Douglas D. Daggett, Creston, for appellee.

Heard by May, P.J., and Schumacher and Badding, JJ.

**BADDING, Judge.**

This case presents a deceptively simple question—does a warranty deed conveying a joint tenant's "undivided interest" in real estate to a revocable trust "for estate planning purposes" show sufficient evidence of an intent to sever the joint tenancy?  We conclude the answer to this question is yes, and affirm the district court.

**I.     Background Facts and Proceedings**

Helen Schardein passed away in March 2019 at the age of ninety-eight.  She was a widow and without children when she died.  Her nephew, Richard Grout, lived thousands of miles away in Oregon, although they spoke frequently and saw one another on an annual basis.

Schardein owned an insurance, real estate, and abstracting company.  She was, by all accounts, a "very sharp lady" who accumulated multiple rental units over the years.  Dan Sickels was one of her tenants.  He became friends with Schardein and "did handyman work" on her rental units.  As their friendship grew, Sickels stopped charging Schardein for his work and began helping her out in other ways.  Sickels explained that Schardein wasn't able to drive because she had macular degeneration.  So he "took her wherever she needed to go"—shopping, errands, doctors' appointments, and the like.  Sickels and Schardein talked to one another every day and traveled together.  Sickels helped her find an investment property in Florida where they spent time every winter for a month or two.

In 2014, Sickels said that Schardein told him that "she always wanted a place" at Sun Valley Lake in Mount Ayr, Iowa.  She liked to go out for rides on the boat, and Sickels liked to fish.  According to Sickels, Schardein told him

that she wanted to do something for me but she didn't want to rewrite her will that she had written in 2004. She wanted to just give me something on the joint tenancy that I could have without probate and she'd take care of me that way on her death.

Sickels described Schardein as "very vibrant, very healthy" at the time.

After this discussion, Schardein purchased the Sun Valley Lake property for $85,000. Before having the deed prepared, realtor Helen Kimes asked Schardein how she wanted to hold title. Schardein said that she wanted the title to be in joint tenancy with Sickels "[w]ith the regular full right of survivorship." Kimes remembers asking Schardein, "Now, Helen, you understand that it goes automatically to the other party if something happens to either of you?" And Schardein replied, "Yes." As a result, the warranty deed transferring the property conveyed it to "Helen Schardein and Dan R. Sickels as Joint Tenants with Full Rights of Survivorship, and not as Tenants in Common." Schardein and Sickels both insured the property, but Schardein paid the property taxes, homeowners' association dues, water, and sewer herself.

In late October 2018, Schardein suffered a stroke. Her nephew, Grout, a retired trust officer for a national bank, flew in from Oregon to care for her. When Grout arrived, Schardein was in a Des Moines hospital. Grout testified Schardein "was limited in her physical capabilities and her communication capabilities" but, "[m]entally, she was the same." Through physical therapy, her condition improved, and she was moved into a rehabilitation center.

On November 13, while at the rehabilitation center, Schardein executed a series of legal documents: (1) a statutory power of attorney, (2) a declaration of trust, and (3) a warranty deed concerning the Sun Valley Lake property. The power

of attorney, which was effective upon execution,[1] designated Grout as Schardein's agent and authorized him to make decisions concerning Schardein's property. The declaration of trust established the "Helen Schardein 2018 Revocable Trust," into which Schardein conveyed all of her real and personal property with Iowa State Savings Bank as trustee.[2] An attachment to the trust listed "all real estate which is or will become part of the trust estate." Included in that list was the Sun Valley Lake property, along with four other properties owned by Schardein. The warranty deed, executed by Grout as Schardein's agent, conveyed the Sun Valley Lake property to the trust through the following language:

> For One Dollar and other valuable consideration, **Helen Schardein, a single person (Grantor),** hereby conveys to **Helen Schardein 2018 Revocable Trust (Grantee),** the following described real estate in Ringgold County, Iowa:
> . . . .
> **All of my undivided interest in and to** [legal description for the Sun Valley Lake property].
> This deed is given for estate planning purposes . . . .

In October 2019, after Schardein's death, Sickels filed an affidavit of surviving joint tenant for change of title to the real estate with the local recorder's office. The affidavit was recorded, but the title was apparently not changed. Believing he was the owner of the property, Sickels listed the property for sale. He accepted an offer on the property in April 2020, and a title opinion was prepared showing that Schardein's trust owned a one-half interest.

---

[1] The power of attorney listed Schardein as the principal, noted her physical inability to sign, and was "signed by [a proxy] in the Principal's presence and at the Principal's express direction." The trust was signed in the same manner.

[2] Later, due to a disagreement between the trustee and Grout about the management of trust assets, the trustee resigned. In March 2019, the trust was amended to designate Grout as trustee.

Upon learning of the potential sale, Grout filed a petition for partition of the property in his role as trustee. The petition alleged "[c]o-ownership" of the property was "no longer in the best interests of the parties" and requested that the property be partitioned by sale. Grout further requested that because "Schardein provided all of the monetary consideration for the purchase of this real estate then all of the net proceeds of the sale of this real estate should be allocated to her revocable trust." In his answer, Sickels largely denied the petition's allegations. With the court's approval, the parties stipulated to the sale of the property for $80,000 and deposited the proceeds to be held in escrow pending resolution of the partition action.

In December, Sickels filed a motion for summary judgment, asserting the 2018 deed did not express an intent to sever the joint tenancy and any interest held by Schardein or the trust was extinguished upon Schardein's death in March 2019. Grout filed a resistance and cross-motion for summary judgment, arguing the 2018 deed severed the joint tenancy and Schardein's capital contributions to the real estate warranted awarding the net proceeds of sale to the trust. The court denied both motions.[3]

The matter proceeded to a bench trial in March 2021. In closing argument, Grout argued Sickels's "case is based upon his wishes." Rather than looking at "secondhand evidence of" Schardein's intent, Grout instead focused on the "warranty deed conveying all of [Schardein's] undivided interest in the subject real estate to the Helen Schardein 2018 Revocable Trust." He argued that deed

---

[3] Sickels's motion was denied due to the existence of genuine issues of material fact precluding summary judgment, and Grout's was denied as untimely.

"operate[d] as the unilateral severance of the joint tenancy converting the ownership to tenants in common." Based on the tenancy in common, Grout again argued the net proceeds should go to the trust because Schardein was the primary capital investor in the property. Sickels responded the joint tenancy was never severed and he is therefore the sole owner as the surviving joint tenant.

In its ensuing ruling, the district court framed the issues as follows: (1) whether the 2018 deed transferring the property to the trust severed the joint tenancy and, if so, (2) how should the net proceeds of the sale be allocated? The court found the declaration of trust established Schardein's intent to sever the joint tenancy. That intent, according to the court, was effectuated by the warranty deed, which converted the trust and Sickels to tenants in common. Due to Sickels's lack of financial contributions to the property, the court awarded all of the net proceeds to the trust. Sickels appeals.

## II.     Standard of Review

An action to partition real property is an equitable proceeding, which we review de novo. Iowa Code § 651.2 (2020); Iowa R. App. P. 6.907; *Newhall v. Roll*, 888 N.W.2d 636, 640 (Iowa 2016).

## III.    Analysis

### A.     Severance of Joint Tenancy

Sickels claims that absent an explicit manifestation of intent to sever the joint tenancy in the 2018 deed, the district court erred in concluding the joint tenancy was severed. He points out the deed's notation that it was effectuated "for estate planning purposes only" to avoid probate proceedings and professes the deed "merely transferred [Schardein's] then current interest as a joint tenant

without modifying or severing the joint tenancy." As such, he argues he became the sole owner upon Schardein's death as the surviving joint tenant.

To evaluate Sickels's arguments, we must first lay out the nature of joint tenancy property under Iowa law. "Joint tenancy property is property held by two or more parties jointly, with equal rights to share in the enjoyment of the whole property during their lives, and a right of survivorship which allows the surviving party to enjoy the entire estate." *In re Est. of Thomann*, 649 N.W.2d 1, 5–6 (Iowa 2002) (citation omitted). "Thus, a joint tenant owns an undivided interest in the entire estate to which is attached the right of survivorship." *In re Est. of Bates*, 492 N.W.2d 704, 706 (Iowa Ct. App. 1992). "A joint tenant's survivorship interest is also known as the accretive interest, and the tenant's undivided interest is also called the proportional interest." *Thomann*, 649 N.W.2d at 6. As one court has explained, the survivorship, or accretive interest, is

> an expectancy that is not irrevocably fixed upon the creation of the estate; it arises only upon success in the ultimate gamble—survival—and then only if the unity of the estate has not theretofore been destroyed by voluntary conveyance, by partition proceedings, by involuntary alienation under an execution, or by any other action which operates to sever the joint tenancy.

*Taylor v. Canterbury*, 92 P.3d 961, 965 (Colo. 2004) (citation omitted). Thus, "the right of survivorship is not fixed in such a way as to constrain a joint tenant from changing his mind and abrogating it." *Id.*

"It is the right of survivorship that is the distinguishing feature of a joint tenancy." *Thomann*, 649 N.W.2d at 6. And it is the right of survivorship that also makes joint tenancies popular. *In re Est. of Johnson*, 739 N.W.2d 493, 494 (Iowa 2007). "Yet the concomitant right of each joint tenant to destroy the joint tenancy,

and thus the right of survivorship, is not always popular, particularly for the surviving joint tenant." *Id.* And therein lies the rub. *Id.*

Severance of a joint tenancy may be effectuated mutually between or among joint tenants, but it may also be effectuated "by the act of one or less than all of them." *Thomann*, 649 N.W.2d at 6 (quoting *In re Baker's Est.*, 78 N.W.2d 863, 867 (Iowa 1956)). While property held in joint tenancy is not devisable by will, "a joint tenancy may be terminated by one party's conveyance of the interest of that joint tenant" and converted into a tenancy in common. *Id.*; *accord Johnson*, 739 N.W.2d at 501 ("[W]e have always recognized a conveyance will sever or terminate a joint tenancy . . . .")[4]; *Bates*, 492 N.W.2d at 706 ("[A] conveyance by one of the parties may also terminate a joint tenancy . . . .").

Sickels does not quibble with these propositions. Instead, he argues under the "intent-based approach" adopted in *Johnson*, 739 N.W.2d at 498, the 2018 deed "did not and cannot itself, with its boilerplate language, divest [Sickels] of his one-half, undivided joint tenancy interest." At oral arguments, Sickels conceded he was really arguing that *Johnson* requires an express statement of intent in the relevant instrument—something along the lines of, "It is my intent to sever the joint tenancy." Though such an approach might be preferable to avoid any dispute as to a grantor's intent, Sickels's argument reads too much into *Johnson*.

---

[4] Although the two terms are used interchangeably, the court in *Johnson* noted they are distinct. 739 N.W.2d at 496 n.5. Severance normally involves the joint tenancy being converted to a tenancy in common, while termination involves elimination of one party's interest by vesting entire ownership in the other. *Id.*

In abandoning the four-unities test in favor of an "intent-based approach,"[5] the court in *Johnson* recognized "this approach does not simply permit a court to determine the intent of a party under the facts and then fulfill it." 739 N.W.2d at 498.

> Instead, it seems fundamental that *intent must be derived from an instrument effectuating the intent to sever the joint tenancy*. Thus, we begin with the premise that intent unaccompanied by some action or instrument sufficient to corroborate and give effect to that intent will not create, sever, or terminate a joint tenancy.

*Id.* at 499 (emphasis added). Here, we have three instruments the parties agree are valid—the 2018 deed, along with the contemporaneously executed power of attorney and declaration of trust. *Cf. id.* at 499–500 (stating a void deed cannot work a severance at common law or under the intent-based approach). So the question is whether these instruments showed an intent to sever the joint tenancy. We conclude they did.

Starting with the deed, Sickels argues it "was effectuated 'for estate planning purposes only,' to simply avoid having to open a probate estate for [Schardein], and merely transferred [her] then current interest as a joint tenant without modifying or severing the joint tenancy." But transferring the Sun Valley Lake property to a trust was not necessary to avoid probate at Schardein's death because, had she done nothing, the property would have transferred to Sickels by operation of law as the surviving joint tenant. *See In re Est. of Logan*, 115 N.W.2d

---

[5] At common law, "questions concerning the existence of joint tenancies were answered by resorting to the 'four unities' of interest, title, time, and possession." *Johnson*, 739 N.W.2d at 496. Amid criticism of the rule, Iowa began gravitating toward an intent-based approach many years ago. *Id.* at 497. Our supreme court decided to officially abandon the four-unities test in *Johnson* and, in its place, expressly adopted an intent-based approach. *Id.*

701, 704 (Iowa 1962) ("The real estate involved was held in joint tenancy with a right of survivorship, and if the only purpose in making the will was to provide for a fee simple title in the survivor, there was no reason for the will."); *see also* R.H. Helmholz, *Realism and Formalism in the Severance of Joint Tenancies*, 77 Neb. L. Rev. 1, 4 (1998) ("[J]oint tenancy avoids the expense and trouble of probate.").

"Actions that are inconsistent with the right of survivorship may terminate a joint tenancy." *Taylor*, 92 P.3d at 966. Here, when Schardein conveyed her "undivided interest" in the Sun Valley Lake property to her trust to be put to use in ways inconsistent with a right of survivorship to Sickels, said action "expressed [a] specific purpose of having the control and the right of disposition of her half of the property" and, thus, severed the joint tenancy. *Cf. Reiss v. Reiss*, 114 P.2d 718, 746–47 (Cal. Ct. App. 1941) (finding joint tenancy severed upon conveyance of proportional interest to a trust with the purpose of destroying the incident of survivorship)[6]; *see also Taylor*, 92 P.3d at 966 (stating that historically, "conveying the property to a third party" or "transferring legal title into a trust" were "considered to be effective means of severing a joint tenancy"); *Wood v. Pavlin*, 467 S.W.3d 232, 324–26 (Mo. Ct. App. 2015) (considering appeal involving one joint tenant transferring undivided interest to his revocable trust five months before death and finding transfer severed joint tenancy, recognizing the "national norm" of the ability to unilaterally sever and the absence of restraint on alienation); *Bryant v. Bryant*,

---

[6] While *Reiss* was decided under a four-unities analysis, which has been abandoned in Iowa, the *Reiss* court's holding also appears to comport with the intent-based approach applied by Iowa courts. *See* N. William Hines, *Joint Tenancies in Iowa Today*, 98 Iowa L. Rev. 1233, 1256 (Iowa 2013) (noting that *Johnson* did not "radically alter[] the joint-tenancy landscape with respect to severance law").

522 S.W.3d 392, 413 (Tenn. 2017) (finding that where one joint tenant conveyed by quitclaim deed an "undivided interest, right, and title" to her grandson without limitation, she severed the joint tenancy).

The "boilerplate language" of the deed highlighted by Sickels "stating that the grantors 'held the real estate in fee simple' and that they 'have good and lawful authority to sell and convey the real estate'" does not change our conclusion. From this language, Sickels argues there was no intent to sever the joint tenancy because the deed "purported to convey the property 'in fee simple,' with no mention of the existing joint tenancy or [Sickels's] status as a joint tenant." Sickels's argument ignores the various instruments that were at play here to give effect to her intent to sever the joint tenancy—the 2018 deed, power of attorney, and declaration of trust.

Following Schardein's stroke, the foregoing three instruments formed a tripartite of Schardein's estate plan. The deed itself explained it was "given for estate planning purposes." While Sickels complains the 2018 deed contained boilerplate language purporting to hold the property in fee simple, the portion of the deed conveying Schardein's interest in the subject property[7] specifically noted she was only conveying "[a]ll of [her] undivided interest" in said property. This language signifying a specific conveyance of her undivided interest trumps the general boilerplate language. *See McNally & Nimergood v. Neumann-Kiewit Constructors, Inc.*, 648 N.W.2d 564, 573 (Iowa 2002) (noting specific clauses trump general clauses when determining intent); *see also Hawk v. Rice*, 325

---

[7] The deed also conveyed another parcel of real property of Schardein's.

N.W.2d 97, 99 (Iowa 1982) (stating that in interpreting a deed, the "grantor's intent is controlling, and it is ascertained by applying general contract principles").

With Schardein's estate-planning-purpose in mind, we turn to the declaration of trust. The declaration assigned, conveyed, transferred, and delivered all of Schardein's real and personal property—expressly including the Sun Valley Lake property—to the trustee. The purpose of the trust was "to provide for the efficient care and management of the trust estate," which included the subject property, "to provide for the protection and maintenance of the trust estate for the beneficiary of th[e] trust," and "to provide for the proper health, education support, maintenance, comfort, and welfare of" Schardein. The net income would be payable to Schardein during her lifetime, as would the principle of the trust estate upon her direction. Upon her death, following the payment of expenses and taxes, the distribution of the trust estate was to be in accordance with Schardein's last will and testament, dated September 14, 2005. Schardein's last will and testament bequeathed the entirety of her estate upon her death to beneficiaries that did not include Sickels, leaving no residue.[8]

The declaration of trust clearly showed Schardein's intent that all of her property, including her interest in the Sun Valley Lake property, become part of the trust estate and, in the event of her death, be distributed in accordance with her last will and testament. The 2018 deed effectuated that intent by conveying her

---

[8] The will was not admitted as an exhibit at trial, but it became part of the record in relation to Grout's motion for summary judgment. It bequeathed personal property to two individuals with the remaining net assets being distributed as follows: 10% among one class of individuals; 20% between two community and religious organizations; 35% to be divided between Grout and one other beneficiary; and 35% to be divided among other various nieces and nephews of Schardein.

undivided, or proportional, interest in the subject property to the trust estate to be so distributed upon her death. With those logistics in mind, the end question is what happens to Sickels's survivorship or accretive interest? The answer to that question can best be reached by answering another question. When the legally effective instruments corroborate Schardein's intent that someone other than Sickels receive her proportional interest in the property upon her death, how can a right of survivorship continue? The answer is simple—it cannot.

Sickels goes on to argue the trust assumed Schardein's status as a joint tenant upon the conveyance, and he became the sole owner upon her death. But this claim is based on his argument that the joint tenancy was never severed, which we have already rejected. Severance converted the form of ownership into a tenancy in common, extinguishing the right of survivorship. *See Kettler v. Sec. Nat. Bank of Sioux City*, 805 N.W.2d 817, 822 (Iowa Ct. App. 2011). As to his final brief point relating to severance, Sickels asserts the "amount of monetary consideration is irrelevant in determining the amount of [his] interest as a joint tenant with full rights of survivorship." It is certainly true that "[t]he right of a joint tenant is generally described as 'an undivided interest in the entire estate to which is attached the right of survivorship.'" *Anderson v. Iowa Dep't of Human Servs.*, 368 N.W.2d 104, 109 (Iowa 1985) (quoting *Brown v. Vonnahme*, 343 N.W.2d 445, 451 (Iowa 1984)). But it is also true that the presumption of equal shares may be rebutted and "[t]he precise share of the undivided interest attributable to an individual joint tenant may be determined." *See id.* As discussed above, we have concluded the joint tenancy was severed, converting the form of ownership to a

tenancy in common, and we consider his challenge to the district court's determination of his interest in the tenancy in common below.

### B.     Division by Partition

Sickels argues that "even if the conveyance severed the joint tenancy, [he] retained one-half of the property as a tenant in common." Based on the disparity in economic contributions to the property, the district court ordered all of the net proceeds flowing from the sale of the property to be released to the trust.

Upon severance, each party held an interest in one-half of the property, but "[t]his does not mean . . . that each party is simply entitled to one-half of the proceeds." *Coyle v. Kujaczynski*, 759 N.W.2d 637, 642 (Iowa Ct. App. 2008); *accord Scheppele v. Schulz*, No. 05-1837, 2006 WL 3436304, at *2 (Iowa Ct. App. Nov. 30, 2006). "It has long been held that parties may be entitled to reimbursement for things such as value-enhancing improvements or indebtedness." *Coyle*, 759 N.W.2d at 642. As a result, "the law of partition, as well as general equitable principles, provides for reimbursement of the contributions of the parties and an equal division of any remaining proceeds." *Id.*

Sickels acknowledges that Schardein paid the initial purchase price of $85,000 for the property and much of the "property's ongoing expenses," including property taxes, insurance, homeowners association dues, water, sewer, and mowing. *See Schroeder v. Todd*, 86 N.W.2d 101, 104 (Iowa 1957) ("Proof of unequal contribution to purchase price of realty by grantees, in conveyance to purchasers of tenancy in common, overcomes presumption that they take in equal shares . . . ."). Yet Sickels argues he should receive fifty percent of the net proceeds from the sale of the property "in consideration of his noneconomic

contributions to this property." But he does not specify what those contributions were or how much they were worth. *Cf. Scheppele*, 2006 WL 3436304, at *3. Under this record, and because the property was sold for less than Schardein's contributions, we conclude the district court committed no error in awarding the net proceeds to the trust as Schardein's successor in interest.

## IV.    Conclusion

We affirm the decision of the district court.

**AFFIRMED.**